

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

January 7, 2025

**BY EMAIL AND ECF**
Hon. Robyn F. Tarnofsky
United States Magistrate Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007

      Re:    *United States v. Valkar Singh*, No. 24 Mag. 4316

Dear Judge Tarnofsky:

      On December 11, 2024, Valkar Singh drove his Maserati across the U.S. border with an invalid, expired Canadian passport. From the border, Singh drove to the Saint Regis Mohawk Reservation at Akwesasne—a sovereign territory whose lands have crossable borders with both the United States and Canada, *see Pyke v. Cuomo*, No. 92 Cv. 554, 1995 WL 694624, at *3 (S.D.N.Y. Nov. 22, 1995)—and picked up nearly 60 kilograms of pills that, as he later told law enforcement officers, he knew were illegal. Singh was arrested later that evening when he delivered those six industrial-sized buckets of pills—more than 100,000 of them—and he was charged with federal drug crimes. At his presentment, the parties negotiated a bail package that won the Government's consent due in large part to Singh's commitment to reside with family in Carteret, New Jersey—nearly 400 miles and a six-hour drive from the Canadian land border he crossed without a valid passport to traffic drugs.

      Several weeks after Singh's presentment and the entry of his conditions of pretrial release, laboratory results confirmed that Singh had been trafficking isotonitazene: a relatively new and exceedingly dangerous synthetic opioid that is more potent than fentanyl, less responsive to overdose-prevention treatments like naloxone, and harder to identify through even state-of-the-art drug-detection techniques. *See, e.g.*, J. Bendjilali-Sabiani et al., *Isotonitazene, a synthetic opioid from an emerging family: The nitazenes*, 79 THERAPIES 655-58 (2024) (describing these troubling features and the identification of isotonitazene in several overdose toxicology reports).

      As a result, Singh faces a significant sentence. Apart from any potential enhancements or reductions, Singh's quantity of isotonitazenes alone—the nearly 60 kilograms of extremely dangerous synthetic opioids he drove from Canada to pick up and deliver to New York City—sets a base offense level of 38, the highest base offense level in the Sentencing Guidelines's Drug Quantity Table.

Against these facts and contrary to the bail package negotiated just weeks ago, Singh seeks permission to relocate from a family home near the court in which he will be prosecuted to a short-term rental mere minutes from the Canadian border. That request should be denied.

Singh is a Canadian citizen with apparently few meaningful ties to the United States. (The two cosigners he offered for his bond are California residents, related to Singh only by marriage, who had reportedly not seen Singh since 2023. He now proposes to live with his mother and adult son—but says they will offer only "moral support," Singh Bail Mod. App. at 2, and is not proposing that they be financially responsible for his appearance in this case.) As a Canadian citizen, Singh would be entitled to cross that border even without the valid passport that he has turned over to Pretrial Services. *See, e.g.*, Canada Border Services Agency, *Travel and identification documents for entering Canada*, https://www.cbsa-asfc.gc.ca/travel-voyage/td-dv-eng.html#s2 ("Canadian citizens…enter Canada by right. . . . The officer will confirm your identity and your right to enter Canada through questioning *and/or* by verifying your documents," which need not include a passport).[1] Singh's location monitoring device would provide little meaningful security against flight: his proposed rental house is 20 miles and less than a 30-minute drive to the Canadian border, giving Pretrial Services hardly any time to see an alert, much less respond to one.

What is more, Singh offers no reason why relocation is necessary—and his justifications for moving to the Canadian border are suspect. He cites "space issues" in the New Jersey residence, *see* Singh Bail Mod. App. at 1, but land records indicate that it is a nearly 2,100-square-foot home. *See* Exhibit A (Middlesex County property tax records). Even if that amount of space were somehow insufficient, Singh gives no reason why he cannot rent a property closer to the Court. Singh's family apparently has the means. Singh's mother and adult son, while not proposing to be financially responsible for Singh's future appearance in court, "have rented a home," Singh Bail Mod. App. at 2, that, according to its Airbnb listing, costs more than $4,300 for a month's stay. (Troublingly, the same Airbnb listing shows that the home is only rented through February 1, 2025. *See* https://www.airbnb.com/rooms/954940385449233679 (as of 3:21 PM on January 7, 2025). The Court should deny Singh's motion to relocate, but if it is granted, the Court should at least require the submission of documentation substantiating that Singh has access to the rental property for the expected duration of his pretrial release.) If the reason for relocating to the Canadian border is so that Singh can live with two family members who expect to regularly go back and forth to Canada, that is all the more reason to deny the application. Living near the border with two other Canadian citizens who can freely drive across that border is intolerable given Singh's risk of flight.

---

[1] United States law enforcement officers familiar with U.S.-Canada land border crossings confirm that the Canada Border Services Agency permits Canadian citizens to return to Canada without travel documents upon a verbal statement of identification confirmed by digital records.

Singh's alleged offenses warrant strict pretrial conditions. Indeed, they carry a presumption against *any* kind of release. *See* 18 U.S.C. § 3142(e)(3)(A). And "[t]he prospect of a severe sentence can create a strong incentive for a defendant to flee and thereby avoid that sentence." *United States v. Zhang*, 55 F.4th 141, 151 (2d Cir. 2022). In view of that incentive and the availability of a site for home detention near this District and far from an easily crossable border, the Court should reject the defendant's bail modification request and maintain the conditions ordered less than a month ago.

Respectfully submitted,

EDWARD Y. KIM
Acting United States Attorney

by: _____
Justin Horton
William C. Kinder
Assistant United States Attorneys
(212) 637-2276 / -2394

cc: Michael Arthus, Esq.
Pretrial Services